**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **ROSALINDA ALCALA,** | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO.** |
| | § | **5:25-CV-340** |
| | § | |
| **LINCOLN NATIONAL LIFE** | § | |
| **INSURANCE COMPANY,** | § | |
| **Defendant** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Lincoln National Life Insurance Company wrongfully terminated Rosalinda Alcala's long-term disability (LTD) benefits.

## PARTIES

1. Plaintiff Rosalinda Alcala is a resident of San Antonio, Bexar County, Texas.

2. Defendant Lincoln National Life Insurance Company is an insurance company licensed to do business in Texas and can be served with citation by serving its agent for service of legal process Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

## JURISDICTION AND VENUE

3. This lawsuit is a claim for disability benefits provided by an ERISA welfare benefit plan brought under 29 U.S.C. §1132(a)(1)(B). This court has

jurisdiction over this claim for disability benefits under 29 U.S.C. §1132(e)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"). Venue is proper in the Western District of Texas, San Antonio Division, in accordance with 29 U.S.C. §1132(e)(2) as the breach of the obligation to continue to pay LTD benefits to Alcala under the group policy occurred in San Antonio, Bexar County, Texas.

## STATEMENT OF FACTS

4. Prior to becoming disabled, Alcala worked as an accounts payable and receivable assistant for USAA. She began working for USAA in 1998. By virtue of her employment, Alcala had LTD coverage under a group policy insuring employees of USAA. The LTD group policy is underwritten and administered by Lincoln.

5. Alcala had a bicycle accident on August 15, 2020 and incurred a four-part fracture of her right proximal humerus (fractures of the upper part of the bone in her right arm and shoulder). She underwent a reverse total shoulder arthroplasty to repair her upper arm and shoulder. The surgeon was Mark Bagg, M.D. She subsequently returned to work but suffered from chronic pain and weakness of her right arm and shoulder and limited mobility.

6. As of December 17, 2021, due to right shoulder pain and weakness, as well as cervicalgia and migraines, Alcala could no longer work. She visited another orthopedic surgeon, Anil K. Dutta, M.D., who is a shoulder and elbow specialist and a member of the faculty of the University of Texas Health Science

Center Medical School. He diagnosed her chronic pain as humeral stem loosening based upon clinical and radiographic evidence. On January 5, 2022, Dr. Dutta performed a "revision Reverse Total Shoulder Replacement with revision of the loose humeral stem to a long stem and attempted to repair the greater tuberosity in the same setting." Tuberosity is the bump of bone at the top of the humerus that serves as the attachment for two rotator cuff muscles.

7. By virtue of her employment with USAA, Alcala had both short-term (STD) and long-term disability (LTD) benefits. Lincoln administers STD benefit claims under an administrative services agreement with USAA. LTD benefits are both administered and underwritten by Lincoln. Since Alcala could not move her right arm after the surgery and needed to undergo extensive therapy and rehabilitation, she submitted a claim to Lincoln for STD benefits. Lincoln approved her claim and paid STD benefits for the maximum period of six months. Her STD benefits expired on June 14, 2022. Since Alcala could not return to work in June of 2022, her claim was reviewed by Lincoln for LTD benefits. The LTD policy is coordinated with the STD plan, so a plan participant must be disabled for six months before LTD benefits commence.

8. After review, Lincoln approved Alcala's claim for LTD benefits. She had not recovered as expected, and continued to have chronic pain, very limited movement, and was unable to use her right arm for simple tasks such as using a computer, a requirement of her job as an accounts payable and receivable assistant. Use of her right arm caused extreme pain and there was also the fear

that she would damage her arm and shoulder (and her prosthetic) with any lifting or movement. Dr. Dutta continued to recommend no movement of her right arm. Lincoln began paying her monthly LTD benefits on June 15, 2022. Her LTD benefit was $2,156.29 per month, which was 60% of her pre-disability pay.

9. In the Lincoln policy under which Alcala is insured in case of disability, the definition of disability changes after 24 months of disability payments are made. In the first 24 months, it is an 'own occupation" definition of disability: an assessment of whether the claimant, due to illness or injury, is unable to perform the occupation that she performed before becoming disabled. After 24 months of benefit payments, the definition of disability changes to an "any occupation" definition.

10. For Alcala, the definition of disability from an "own occupation" to an "any occupation" changed on June 15, 2024, after two years of LTD payments. Despite Dr. Dutta's opinion that Alcala remained disabled after June 15, 2024 due to the severe nature of her injury, and despite his continued restrictions on the use of her right arm, Lincoln terminated her LTD benefits effective June 15, 2024 (the beginning of the "any occupation" period). In terminating her benefits, Lincoln relied upon the opinions of its paper review medical and vocational consultants rather than Dr. Dutta, and disregarded the testimony of Alcala, who indicated she could still not work at any full-time occupation as of June 15, 2024 and thereafter.

11. Alcala timely appealed the termination of her LTD benefits. Her appeal included a letter from Dr. Dutta dated July 24, 2024:

> ".....
> It is my medical opinion as a shoulder and elbow faculty at the University of Texas and as her treating orthopedic surgeon that she (has) a permanent severe disability from her shoulder injury. A reverse total shoulder arthroplasty in a younger patient for fracture has a guarded prognosis and she has continued severe weakness, chronic pain, and dysfunction of her entire right upper extremity. This includes numbness and tingling, lateral arm pain, an external rotation lag, and neck and back pain. She has limitations of lifting and will not be able to perform overhead activities. Her lifting limit will be 1-2 pounds lifelong. She has loss of rotation of her shoulder that will be permanent. She may require revision arthroplasty and likely will need some type of revision based on her age and survival data in the literature on shoulder replacement."

12. In addition to this evidence, Alcala submitted a number of narratives to Lincoln, explaining why she couldn't work as of June 15, 2024 and thereafter. This included the following explanation:

> "This situation has been incredibly frustrating, leading to severe anxiety and depression. Losing use of my dominant arm, which now has a prosthetic and an extended longer humerus prosthetic, has severely restricted my range of motion, especially in external movement, and has left me with extreme weakness and constant pain in my trapezius muscles. My doctors, including Dr. Dutta, have documented my limitations and the substantial impact on my ability to function.......
>
> The emotional and physical toll of losing both my job and my abilities has been overwhelming, affecting every part of my life. Every day, I struggle to adjust to this new reality, feeling the profound loss of my former self and the independence I once had.
>
> I face substantial challenges in controlling and manipulating my arm, which is profoundly weak and unable to perform even basic movements, such as using a mouse or typing. Any repetitive motion-regardless of weight-leads to a rapid deterioration in function, resulting in severe weakness, pain, and complete loss of control. My injury affects my dominant right arm, and any external movement causes a debilitating loss of control.
>
> Additionally, I am unable to keep my head upright in a static position for extended periods, which causes constant, radiating pain from my hand

through my shoulder and up to my neck, often triggering severe migraines. This persistent pain affects my daily life, making it difficult to focus and function effectively.

My condition is not solely about weight restrictions; it fundamentally limits my ability to use my arm for any sustained or repetitive motion. Following my doctors' advice, I am required to avoid specific movements to protect my prosthetic from further damage or additional surgery. Engaging in such movements would pose a significant risk of stress and could severely compromise my health.

Further, a typical workplace environment requires a level of speed, precision, and consistency that I am physically unable to achieve. Due to my disability and the limited range of motion in my right arm, I am unable to complete tasks at the expected pace. Constant pain, migraines, and the inability to control my arm prevent me from reaching any standard of productivity, and I am also unable to hold my head upright for extended periods. Therefore, these desk-based roles are not only unrealistic but entirely unachievable for me, as I lack the strength and mobility needed to manipulate my arm...."

13. Once again, rather than rely upon Dr. Dutta's opinions and the testimony of Alcala, Lincoln relied upon its paper review medical consultants and vocational consultants and upheld its termination of LTD benefits. Lincoln sent out its final adverse benefit determination in a letter dated March 3, 2025. In the final denial, Lincoln notified Alcala that she had exhausted her rights of administrative appeal and her claim was closed.

**Exhaustion of Appeal Requirements**

14. Alcala exhausted the administrative appeal requirements of ERISA and the Lincoln LTD group policy and therefore has the right to bring this action.

**The Decision to Terminate Alcala's LTD Benefits Was Contrary to the Preponderance of the Evidence and Also Was an Abuse of Discretion**

15. Even if there is language in the policy or plan-related documents that is interpreted to grant Lincoln discretion to make benefit determinations under the group LTD policy, these discretionary provisions are unenforceable as to Alcala's claim for continued LTD benefits because it is a violation of Texas law to seek enforcement of a discretionary clause in a disability policy against an insured living in Texas. Texas Insurance Code, §1701.062, and 28 Texas Administrative Code §§3.1201-3.1203. This anti-discretionary statute and its accompanying regulations are not preempted by ERISA.

16. The preponderance of the evidence shows that Alcala remained unable to perform any full-time occupation as of June 15, 2024 and thereafter. She is entitled to continued LTD benefits as of June 15, 2024 and thereafter.

17. In the unlikely event that Lincoln is found to have retained its discretionary authority so that this matter is reviewed under an abuse of discretion standard of review, Lincoln abused its discretion in terminating Alcala's LTD benefits.

18. Lincoln's decision to terminate Alcala's LTD benefits beyond June 14, 2024 resulted in Lincoln saving money, as Lincoln is both the decision-maker and the underwriter of LTD benefits. As a result, Lincoln acted under a conflict of interest when it terminated Alcala's LTD benefits. If abuse of discretion is determined to be the proper standard of review, this conflict of interest should be considered as a factor by this Court in determining whether Lincoln abused its discretion in terminating Alcala's LTD benefits.

## CAUSE OF ACTION

**Claim for LTD Benefits from June 15, 2024**
**And Thereafter Under 29 U.S.C. §1132(a)(1)(B) of ERISA**

19. Alcala seeks to recover LTD benefits from June 15, 2024 to the present (and so long as this case is pending), under the authority of 29 U.S.C. §1132(a)(1)(B) of ERISA. Since she remains disabled as that term is defined within the LTD policy, Alcala is entitled to LTD benefits and Lincoln is obligated to pay those benefits under the LTD group policy.

## RELIEF REQUESTED

20. Lincoln owes Alcala $2,156.29 per month under the group policy beginning June 15, 2024. As of June 15, 2025, Alcala is entitled to the sum of $25,875,48 in back benefits ($2,156.29 x 12 months). Alcala requests these back benefits as well as additional monthly benefits that accrue after June 15, 2025 but during the pendency of this litigation at the rate of $2,156.29 per month.

## ATTORNEY'S FEES

21. Alcala requests her attorney's fees and costs under 29 U.S.C.A. 1132(g).

## CONCLUSION

Alcala requests back LTD benefits in the amount of $25,875.48, plus monthly disability benefits that accrue after June 15, 2025 but while this case is pending at the rate of $2,156.29 per month. She also requests her attorney's fees, pre-judgment interest at the maximum rate allowed by law, post-judgment interest,

and for such other and further relief, both at law and in equity, to which she may show herself to be justly entitled.

Respectfully Submitted,

**Law Office of Jeffrey E. Dahl**
The Commerce Building
314 E. Commerce, Suite 300
San Antonio, Texas 78205
(210) 527-0900 (Telephone)
(210) 527-0901 (Facsimile)
jdahl@erisaattorneyintexas.com

By: *__/s/ Jeffrey E. Dahl*
**Jeffrey E. Dahl**
**State Bar No. 05310900**
**Attorney for Plaintiff Rosalinda Alcala**